584 S.E.2d 893

**In the Matter of the CARE AND TREATMENT OF Peter E.J. HARVEY, Appellant.**

No. 25681.

Supreme Court of South Carolina.

Heard May 28, 2003.

Decided July 21, 2003.

Rehearing Denied Aug. 19, 2003.

54

Tara Dawn Shurling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Deputy Attorney General Treva Ashworth, Assistant Attorney General Deborah R.J. Shupe, and Assistant Attorney General Steven R. Heckler, of Columbia, for Respondent.

Justice WALLER.

Appellant Peter E.J. Harvey appeals his 1999 commitment pursuant to the South Carolina Sexually Violent Predator Act ("the SVP Act"). *See* S.C.Code Ann. § 44–48–10 *et seq.* (2002). He also appeals from his 2000 annual review trial. *See* § 44–48–110. We reverse the 1999 order of commitment and remand.

## PROCEDURAL BACKGROUND

As a juvenile, Harvey was adjudicated delinquent in 1994 for committing first degree CSC with a minor. In 1998, at age 19, he was paroled. Within weeks of being paroled, the State petitioned for Harvey's commitment under the SVP Act. In February 1999, a bench trial was conducted, and the trial court found Harvey to be a sexually violent predator. Harvey appealed. While the appeal was pending, Harvey received an annual status review, and a jury trial was held in October 2000 to determine whether his status had changed. *See* § 44–48–110. The jury found Harvey should remain committed under the SVP Act.

## FACTS [1]

Harvey was born in 1978. Prior to turning 14, Harvey was both the victim of sexual abuse as well as a perpetrator. At the age of approximately eight, he was molested by a married couple that had a daughter Harvey's age. The abuse involved the four engaging in various sexual activities and went on for a prolonged period of time. Harvey also reported being sexually assaulted by an older boy where the boy forced Harvey to perform oral sex.

At the age of ten while visiting relatives in Michigan, Harvey was involved in an incident with twin boys who were at least six years old. While at the twins' pool, Harvey suggested they all take off their clothes, and the three boys walked around naked for about 20 minutes. When the twins' parents found out, they pressed charges against Harvey. As a result, he attended a sex offender therapy program in Georgia.[2]

When Harvey was approximately 13 years old, he had his younger brother, who was about five years old, perform oral sex on him. This conduct was the basis for his delinquency adjudication in 1994.

The State presented expert testimony from psychiatrist Dr. Donna Schwartz–Watts. Dr. Schwartz–Watts diagnosed Harvey with pedophilia.[3] In her written report, she explained that

---

1.  Because we are reversing from the 1999 proceeding, we confine the factual presentation to that trial, except where otherwise noted.

2.  We note that at the 1999 trial, the twin boys were repeatedly referred to as Harvey's victims. It was not until the review trial in 2000 that the precise details of this Michigan incident were revealed.

3.  At the State's request, the trial court took judicial notice of the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM–IV") as the document regularly relied upon for the diagnosis of mental disorders. According to the DSM–IV manual, the diagnostic criteria for pedophilia include:

    A.  Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 or younger);
    B.  The fantasies, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other important areas of functioning; and

her diagnosis was based on Harvey's "acts over the past that demonstrate he has arousal to children." At the bench trial, however, Dr. Schwartz–Watts stated that during her evaluation of Harvey, he had admitted having "some recurrent urges" even since turning 16.[4] Furthermore, Dr. Schwartz–Watts opined Harvey met the criteria for a sexually violent predator and that outpatient treatment was not yet appropriate for Harvey.

On cross-examination, Dr. Schwartz–Watts stated that Harvey was not a sociopath or an antisocial personality. She explained she used the DSM–IV criteria to make her diagnosis and that although Harvey's past acts did not occur after he was 16, he admitted to her that he had urges about having sex with children. She acknowledged her written report did not state that Harvey had recurrent urges over a six-month period.

Over Harvey's objection, the trial court allowed into evidence a "Log of Critical Incidents and Clinically Significant Events" ("the Log"). The Log is an unsigned document kept by the Generations Group Home ("GGH"), a treatment center for juveniles with sexually aggressive behaviors.[5] The Log details various incidents involving Harvey and explanations of these incidents.[6] Dr. Schwartz–Watts reviewed the Log as part of her evaluation, and she testified "there were some things there [she] was concerned about." She also stated, however, that she did not base her diagnosis on the document.

---

C. **The person is at least age 16 years and at least 5 years older than the child or children in Criterion A.**
(Emphasis added).

4. Dr. Schwartz–Watts evaluated Harvey in January 1999 when Harvey was age 20.

5. For a portion of time while Harvey was serving his DJJ sentence, he was a resident at GGH. According to Dr. Schwartz–Watts' written report, Harvey stated that the "dogma" of the GGH program was sexual abstinence and he was chastised for having sexual fantasies which involved females.

6. For example, there are entries in the Log focusing on Harvey's "efforts to sexualize" female employees of GGH, as well as entries regarding his progress (and lack of progress) in treatment.

Harvey objected to the admission of the Log based on hearsay. He argued it did not comply with the business record hearsay exception since it contained personal judgments and opinions. *See* Rule 803(6), SCRE. The trial court, however, found it only contained "facts and data" and admitted the document.

As part of Harvey's case, he called Dr. Karl Bodtorf as an expert in forensic psychology. Dr. Bodtorf also evaluated Harvey, but he did not diagnose Harvey with pedophilia. Because of Harvey's age at the time of his offense, and the age difference between the children in the Michigan incident, Dr. Bodtorf did not feel that pedophilia, as defined by the DSM–IV, was an appropriate diagnosis. In addition, Dr. Bodtorf reported that Harvey denied interest in children, and he stated that the psychological testing did not show Harvey had proclivities toward children. Dr. Bodtorf opined that outpatient treatment, which he could provide, would be an appropriate option for Harvey.

The trial court found beyond a reasonable doubt that Harvey suffered from pedophilia and therefore ordered his commitment pursuant to the SVP Act.

## ISSUES

Harvey raises two issues from the February 1999 bench trial:

1. Did the State fail to offer sufficient evidence Harvey was a sexually violent predator?
2. Did the trial court err in admitting the Log?

## DISCUSSION

### 1. Sufficiency of the Evidence

Harvey argues the evidence at the bench trial was insufficient to meet two components of the SVP definition: mental abnormality and likelihood of sexual violence.

In an appeal regarding sufficiency of the evidence in a SVP case, the appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling. *In re Matthews*, 345 S.C. 638, 646, 550 S.E.2d 311, 315 (2001),

*cert. denied,* 535 U.S. 1062, 122 S.Ct. 1928, 152 L.Ed.2d 834 (2002). In other words, the court is concerned with the existence of evidence, not its weight. *Id.*

Under the SVP Act, the State bears the burden of proving beyond a reasonable doubt that a person is a sexually violent predator. *See* S.C.Code Ann. § 44–48–100 (2002). A sexually violent predator is defined as a person who: (a) has been convicted of a sexually violent offense; and (b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. § 44–48–30(1)(a) & (b). The Act defines "[l]ikely to engage in acts of sexual violence" to mean the person's "propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." § 44–48–30(9).

■ Harvey contends the State failed to prove he is a pedophile because Dr. Schwartz–Watts' diagnosis of pedophilia was inconsistent with the DSM–IV criteria. Specifically, Harvey maintains that his acts of sexual misconduct which occurred before he was 16 should not be the basis of a pedophilia diagnosis. Since the DSM–IV criteria clearly indicate that a pedophilia diagnosis is only appropriate if the person is over 16, we share Harvey's concern with the focus placed on his acts. *See* footnote 3, *supra.* Moreover, we note the Michigan incident does not satisfy the DSM–IV criteria since Harvey was not five years older than the twin boys. Nonetheless, there remain portions of Dr. Schwartz–Watts' testimony which justify her diagnosis. She testified that Harvey reported having urges after turning sixteen and her diagnosis was based on his present mental state. Technically, this meets the definition of pedophilia. Thus, there was sufficient evidence of a mental abnormality or disorder. *See In re Matthews, supra* (the court is concerned with the existence of evidence, not its weight).

■ Harvey also argues the State failed to prove that the pedophilia made him "likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Harvey's argument is based primarily on the United States Supreme Court's holding in

*Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), that there must be proof of a lack of ability to control behavior.

In *In re Luckabaugh,* 351 S.C. 122, 568 S.E.2d 338 (2002), this Court noted that the *Crane* decision "does not mandate a court must separately and specially make a lack of control determination, only that a court must determine the individual lacks control while looking at the totality of the evidence." *Id.* at 143, 568 S.E.2d at 348. The *Luckabaugh* Court went on to state the following:

> Inherent within the mental abnormality prong of the Act is a lack of control determination, i.e. the individual can only be committed if he suffers from a mental illness which he cannot sufficiently control without the structure and care provided by a mental health facility, rendering him likely to commit a dangerous act.

*Id.* at 144, 568 S.E.2d at 349. Thus, the Court concluded the requirements of the SVP Act "are the functional equivalent of the requirement in *Crane.*" *Id.*

■ Accordingly, given Dr. Schwartz–Watts' diagnosis of pedophilia and her testimony that Harvey met the statutory SVP definition, we do not agree the State failed to present evidence of present dangerousness. *See In re Matthews, supra.*[7]

## 2. *Admission of the Log*

■ Harvey next argues the trial court erred in admitting the Log from GGH over his hearsay objection. We agree.

Hearsay is a statement, which may be written, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Rule 801, SCRE. Hearsay is not admissible unless there is an applicable

---

7. Although we find the State provided sufficient evidence in this case, we do reiterate that the purpose of the requirements in the SVP Act is to ensure that these involuntary commitment procedures are "**only** used to control a 'limited subclass of dangerous persons' and **not to broadly subject any dangerous person to what may be indefinite terms.**" *Luckabaugh,* 351 S.C. at 144, 568 S.E.2d at 349 (citation omitted, emphasis added).

exception. *See* Rule 802, SCRE. The business record exception reads as follows, in pertinent part:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness; **provided, however, that subjective opinions and judgments found in business records are not admissible.**

Rule 803(6), SCRE (emphasis added).

At trial, the State called Terri Copilevitz, the clinical director at GGH. She stated the Log was a summary "written by our clinical director at the time and [Harvey's] treatment coordinator providing a summary of the critical incidents that [Harvey] had been a part of." She explained that "**critical incidents**" are "the way that we have staff report to us any behaviors that are **significant** that need to be followed up by the clinical staff." (Emphasis added).

Harvey argues the Log is replete with subjective opinions and judgments and therefore is inadmissible hearsay. We agree. Even the description of what this document is indicates its highly subjective nature. Moreover, it is an unsigned document which repeatedly offers judgments about the progress of Harvey's treatment and his behaviors. Because the document did not meet the business record exception, we hold the trial court erred in admitting this document. *See* Rule 803(6), SCRE.

Nonetheless, the State argues that any error is not prejudicial. We disagree.

■ Unless the appellant was prejudiced by the erroneous admission of hearsay, reversal is not required. *E.g., State v. Mitchell,* 286 S.C. 572, 336 S.E.2d 150 (1985). The *Mitchell* court explained as follows:

Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it "could not reasonably have affected the result of the trial."

*Id.* at 573, 336 S.E.2d at 151 (quoting *State v. Key,* 256 S.C. 90, 180 S.E.2d 888 (1971)).

■ The State argues there could be no prejudice from the Log's admission because the trial court orally indicated it would not consider this document. The State contends the trial court's comments from the bench show it relied primarily on Dr. Schwartz–Watts' evaluation and testimony in reaching its decision. However, we note that (1) the trial court admitted the Log over objection, (2) Dr. Schwartz–Watts specifically commented on it during her testimony, and (3) the State used it to impeach Dr. Bodtorf's opinion and lend support to Dr. Schwartz–Watts' diagnosis of pedophilia. Therefore, the Log entered into the trial in a significant way. Moreover, despite the trial court's oral comments about the Log, the court's written order does not state that it, in fact, disregarded the Log. *See Ford v. State Ethics Comm'n,* 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001) ("The written order is the trial judge's final order and as such constitutes the final judgment of the court.").

Accordingly, we find the erroneous admission of the Log was not harmless. *See Mitchell, supra.*

## CONCLUSION

In sum, due to the erroneous and prejudicial admission of the Log, we reverse the trial court's 1999 order finding Harvey to be a sexually violent predator.

■ Because we find error with the initial determination of SVP status, we need not review the issues raised from the 2000 annual review trial. Clearly, if Harvey had not been adjudicated a sexually violent predator in 1999, he would not be confined and subject to annual review. The sole issue at an annual review trial is whether a person **remains** a sexually violent predator. *See* § 44–48–110 ("The burden of proof at

the trial is upon the State to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder **remains** such that the person is not safe to be at large and, if released, is likely to engage in acts of sexual violence.") (emphasis added). Moreover, we note that whatever the jury found in the 2000 trial certainly could not in any way "cure" an error that occurred at the initial trial.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.