610 S.E.2d 504

**The STATE, Respondent,**

v.

**Michael LIGHT, Appellant.**

**No. 3956.**

Court of Appeals of South Carolina.

Heard Jan. 12, 2005.

Decided March 7, 2005.

---

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

STILWELL, J.:

Michael Light appeals his conviction for murdering his girlfriend, Priscilla Davis. He argues the trial court erred in refusing to charge the jury on involuntary manslaughter and self-defense. We affirm.

## BACKGROUND

Texas authorities arrested Light during a traffic stop because he had a gun in his glove compartment and did not have a concealed weapons permit. He was interrogated several times by Texas authorities while in custody. Although Light gave little information and conflicting statements about where he had been and why, Texas authorities discovered a South Carolina missing persons report on Davis that indicated she might be traveling with Light. The arresting officer noticed blood on Light's blue jeans and shoes, and was shocked when Light began to refer to Davis in the past tense.

During a tape-recorded interview conducted by a Texas Ranger, Light said he and Davis went to a local club and then spent the night at his home in Pelion after a "little squabble." The next morning, Light went out to buy breakfast. When he returned home, Davis confronted him, holding a long brown hair in one hand and a .22 rifle in the other. Light said Davis

accused him of having another woman in the house because she found the hair on a lubricant bottle in Light's bedroom. Light said he denied the accusation but Davis

> went to acting a fool and called me a liar. And the only thing I could think of, I was—I tried to distract her. I remember swinging my left arm, I think it was, to get the rifle out of her hand. When I did, all I can tell you, it went off. Honestly, I didn't even think it hit her.
>
> Then she fell. I thought it might have just grazed her shoulder. So I ran out the back door to get help because I don't have a telephone. I ran back to her and she wasn't breathing, and I just panicked. I didn't think nobody would believe me. So the only thing I did, I just put her in the trunk of the car; and I just took off. I just drove and kept driving.

Later in the same interview, Light stated:

> [I]n spite of the fact that it, the gun, the rifle, was in my hand when it went off. I will not deny that. I took it from her. It was either her or me. I could have run, like I told them; but I really didn't think about it.

Light explained he "knew deep down" it was not all his fault but did not think anyone would believe him, so he put Davis' body in the trunk of her car and started driving with no destination in mind. He threw the rifle off a bridge and into a river, stopped to put Davis' body out, and kept driving.

With Light's help, police found Davis' body in a wooded area off the interstate in Alabama. Although the body was in an advanced state of decomposition, her shirt had a hole in the chest area. At trial, a firearms expert testified he found no gunshot residue around the hole and this indicated a distant shot of 30 to 40 inches as opposed to a close-up shot. The pathologist testified the angle of the shot revealed it was "extremely unlikely" the shooter stood face to face with the victim. The more likely scenario, he explained, was that Davis was sitting or kneeling and the shooter was standing with the rifle on his shoulder. Additionally, he testified the wound was inconsistent with an accidental shooting and consistent with a purposeful shooting.

At trial, Light recounted the shooting as follows:

Q. What happened?

A. She was pointing [the rifle] at me and screaming and hollering and accusing me as usual. I asked her, "What the heck is wrong with you, you know? There has not been another woman in this house."

She just kept on and on, screaming and screaming at me. I was afraid she was going to shoot me. So during the screaming—and my living room is very small. Y'all have seen that. Between two couches is where this happened.

The only thing I remember, I did try—I took my left hand to knock it away, try to push it away from me. Than [sic] after I jerked it away from her, I did stumble back several feet, you know after jerking it. The weapon discharged but it was not intentionally.

Q. Was that in your hands?

A. It was in my hands. I do not deny that.

Q. And you pulled the trigger?

A. Not intentionally but I had to.

. . . .

Q. No one else pulled the trigger?

A. There was nobody else holding the gun. I mean, let's be logical. It was just me and her there. But after I jerked the weapon out of her hand, it . . .

Q. And there has been testimony about whether y'all were standing erect, that is, straight up, flat footed face to face. I take it you were not?

A. Not in the heat of the moment. There is nobody, when you are arguing like that, nobody is going to be standing there just standing there. There is a lot of movement going on.

Q. Did she back away from you? Did you back away from her?

A. I went back from her after we was tussling with the rifle.

During cross-examination, the following exchange occurred:

Q. You told the Texas Ranger this gun was in your hands exclusively when it went off, when you pulled the trigger.

A. After we fought for the rifle and I got it out of her hands, it did discharge; and it was in my hands. I don't deny that.

Light's attorney requested jury instructions on involuntary manslaughter and self-defense. At the conclusion of the evidence, the trial court denied the request and charged the jury on the law of murder, voluntary manslaughter, and accident. The jury found Light guilty of murder.

## STANDARD OF REVIEW

The evidence presented at trial determines the law to be charged. *State v. White*, 361 S.C. 407, 412, 605 S.E.2d 540, 542 (2004). The trial court's refusal to give a requested jury instruction must be both erroneous and prejudicial to warrant reversal. *State v. Burkhart*, 350 S.C. 252, 263, 565 S.E.2d 298, 304 (2002).

## DISCUSSION

### I. Involuntary Manslaughter

Light argues the trial court erred in failing to charge the jury on the law of involuntary manslaughter. We disagree.

"A trial court should refuse to charge a lesser-included offense only where there is no evidence the defendant committed the lesser rather than the greater offense." *State v. Chatman*, 336 S.C. 149, 152, 519 S.E.2d 100, 101 (1999). Involuntary manslaughter is the unintentional killing of another without malice while (1) engaged in an unlawful activity that is not a felony and does not naturally tend to cause death or great bodily harm or (2) engaged in a lawful activity with a reckless disregard for the safety of others. *Bozeman v. State*, 307 S.C. 172, 176, 414 S.E.2d 144, 146–47 (1992).

According to Lights statements and testimony, he was in his home when confronted by Davis, who was armed, accusatory, and angry. Thus according to his version of events he was engaged in a lawful activity when he took the rifle from her, arming himself in self-defense while disarming her.[1] Because there is evidence he was engaged in a lawful activity, an

---

1. The State presented evidence the shooting was not accidental. However, that evidence would have not supported an involuntary manslaughter charge because it tended to show the shooting was intentional.

involuntary manslaughter charge was proper only if he lacked malice and if he engaged in the lawful activity with reckless disregard for the safety of others. The trial court refused to so charge the jury, concluding the testimony did not support involuntary manslaughter because no evidence indicated recklessness. We agree the evidence did not warrant a charge on involuntary manslaughter. Although Light gave conflicting statements and testimony, none of his statements suggest he handled the gun with reckless disregard for the safety of others. Instead, he maintained the discharge was merely an accident.

However, Light cites *State v. Burriss* and *State v. Crosby* to support his argument that an involuntary manslaughter charge is warranted where the accused is armed in self-defense and the gun discharges accidentally. Both cases are distinguishable.

In *Burriss*, the appellant appealed his murder conviction, arguing the trial court erred in refusing to charge accident and involuntary manslaughter to the jury. Viewed in the light most favorable to Burriss, the evidence showed two men attacked him, knocking him down and attempting to rob him. Burriss drew a gun from his pocket and shot twice into the ground, causing both men to back away from him. While he was attempting to get off the ground, he saw one of the attackers reappear and the other begin advancing toward him. He picked up his gun again, but this time it "went off," killing one of the attackers. *State v. Burriss*, 334 S.C. 256, 258–59, 513 S.E.2d 104, 106 (1999). The trial court refused Burriss requests for charges on accident and involuntary manslaughter, and on appeal our supreme court reversed, concluding Burriss was entitled to both requests.

As to accident, the court noted the excuse of accident is only available where the accused was acting lawfully and thus the primary question was whether Burriss was acting lawfully at the time of the shooting. *Id.* at 259, 513 S.E.2d at 106. The court found that notwithstanding his unlawful possession of a weapon, on which the trial court based its refusal to charge accident, evidence in the record supported Burriss' claim that he armed himself in self-defense at the time of the shooting. *Id.* at 262–63, 513 S.E.2d at 108.

On the issue of involuntary manslaughter, the court stated "[a]gain the pivotal issue is whether [Burriss] was engaged in a lawful activity at the time of the killing." *Id.* at 265, 513 S.E.2d at 109. Although the court noted it had previously held "the negligent handling of a loaded gun will support a finding of involuntary manslaughter," the court focused on the lawfulness of the activity and made no mention of the level of care Burriss used in handling the weapon. *Id.* Here, although Lights statements support a finding he was lawfully armed in self-defense at the time of the shooting, there is no evidence he mishandled the gun and thus no evidence of recklessness as is required to warrant an involuntary manslaughter charge.

*Crosby* is equally unavailing to Light. Although Crosby also alleged the shooting occurred while he was armed in self-defense, this court affirmed the trial courts refusal to charge involuntary manslaughter, citing Crosby's testimony that he had pulled the trigger and concluding the shooting was intentional. Our supreme court reversed, noting immediately after he testified he had pulled the trigger, Crosby added he did not even know he had pulled the trigger, suggesting he did not intentionally discharge the weapon. *State v. Crosby,* 355 S.C. 47, 52–53, 584 S.E.2d 110, 112 (2003). Light contends his case has identical evidence and inferences. However, Crosby testified he closed his eyes while handling the loaded weapon. *Id.* at 53, 584 S.E.2d at 112. That testimony constituted evidence of recklessness, which is altogether absent in Lights case. Because there was no evidence to support a finding of recklessness, the trial court properly refused to charge involuntary manslaughter.

■ In his statement of issues on appeal, Light contends the evidence reveals that he and the victim were struggling over the gun, "and that the gun discharged," making this a classic case of involuntary manslaughter. Indeed, a charge on involuntary manslaughter would be appropriate if there was evidence that a weapon discharged during the struggle between the victim and Light. *See Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991). However, Light fails to argue elsewhere in his brief that the weapon discharged during the course of the struggle, concentrating his argument instead on the contention that he was acting lawfully but with reckless disregard for the safety of the victim. As a consequence, we

consider this issue to have been abandoned on appeal. *First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (deeming an issue abandoned because the appellant failed to provide pertinent argument or supporting authority).

## II.  Self-defense

■ Light argues the trial court erred in failing to charge the jury on self-defense.  We disagree.

In order to warrant a self-defense charge in a case involving the use of deadly force, the evidence must show:

(1)The defendant was without fault in bringing on the difficulty;

(2)The defendant ... actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger;

(3)If the defense is based upon the defendants actual belief of imminent danger, a reasonable prudent man of ordinary firmness and courage would have entertained the same belief.  If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life;  and

(4)The defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*State v. Wiggins,* 330 S.C. 538, 545, 500 S.E.2d 489, 493 (1998).

Although Light vacillates in his various accounts, he stated he had disarmed Davis and taken possession of the rifle when the shot was fired.  Under those facts, Davis, then unarmed, no longer posed a threat to the armed Light and he could not have reasonably believed she did.  Therefore, the evidence demonstrates he did not have the right to use deadly force in self-defense and the trial court properly refused to so charge the jury.

**AFFIRMED.**

ANDERSON and SHORT, JJ., concur.