633 S.E.2d 152

**The STATE, Respondent.**

v.

**Thomas BRYANT, Petitioner.**

No. 26183.

Supreme Court of South Carolina.

Heard Nov. 15, 2005.

Decided July 17, 2006.

Rehearing Denied Aug. 11, 2006.

512

Assistant Appellate Defender Robert M. Dudek, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, and Solicitor Warren B. Giese, all of Columbia, for Respondent.

Chief Justice TOAL:

We granted Petitioner a writ of certiorari to review *State v. Bryant*, 356 S.C. 485, 589 S.E.2d 775 (Ct.App.2003), in which the court of appeals affirmed the trial court's admission of Petitioner's two prior firearms convictions. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Petitioner has been confined to a wheelchair for over twenty years due to a car accident. On July 22, 1999, he was visiting the Bottoms Up strip club, where he met the victim, Daniel Fletcher Austin. At approximately 3:30 a.m., the two left the club together to go back to Petitioner's hotel room.

Between 3:30 and 4:00 a.m., as he was leaving his room to go to work, Kevin Hawkins saw Petitioner alone in the corridor. Petitioner asked Hawkins to get him help because he said he had been injured in a physical altercation. Hawkins informed the front desk clerk of Petitioner's claims. As the

clerk called the sheriff's department, she heard shots. Immediately before calling the sheriff, the clerk testified she had given Austin a key to Petitioner's room.

The police arrived and found Austin lying in the breezeway shot six times and bleeding. A stand-off ensued between the police and Petitioner which lasted 20–25 minutes. The stand-off ended when a SWAT team rushed Petitioner's room and found Petitioner on the floor with a self-inflicted gunshot wound to his stomach.

Petitioner was convicted of murder and the unlawful possession of a weapon by a convicted felon. He was sentenced to life without parole for the murder and five years concurrent for the weapons charge.

## ISSUE

Did the circuit court err in admitting Petitioner's prior firearms convictions?

## LAW/ANALYSIS

At trial, prior to Petitioner testifying, the State sought to introduce evidence that Petitioner had previously been convicted of voluntary manslaughter in 1984, shoplifting in 1992, a bad check charge in 1994, possession of a unlawful weapon by a convicted felon in 1997, and pointing and presenting a firearm in 1998. Petitioner did not object to the admission of the shoplifting or bad check convictions. He argued, however, that the manslaughter conviction should be excluded because it was more than ten years old. As to the two weapons convictions, Petitioner argued they did not have anything to do with truthfulness and thus their probative value was low. He further argued that their similarity to the current charges caused their admission to be highly prejudicial.

The State contends the convictions were offered to impeach Petitioner and to show "the defendant continues to get in trouble even after 1990. Every two years, he commits at least two crimes." The trial judge allowed the firearms convictions to be introduced, and although the manslaughter conviction itself was not introduced, Petitioner stipulated he had been convicted of a violent crime in 1984.

The court of appeals affirmed Petitioner's convictions in a 2:1 decision. *Bryant*, 356 S.C. 485, 589 S.E.2d 775. Relying on, *Green v. State*, 338 S.C. 428, 527 S.E.2d .98 (2000), the majority reviewed the trial court's statements as a whole and concluded that the trial court had an appropriate reason to admit the evidence "based on [the trial court's] belief the testimony could lead to an inference [Petitioner] was unworthy of credibility because of his prior convictions." *Bryant*, 356 S.C. at 491, 589 S.E.2d at 776.

Noting the importance of "[Petitioner's] testimony to his defense, and the state's burden of discounting his testimony to prove the elements of murder," the Court of Appeals nonetheless held the trial judge did not abuse his discretion in admitting Petitioner's prior convictions to impeach his credibility. *Id.* at 492, 589 S.E.2d at 779. Judge Beatty dissented and stated he believed the prior convictions were improper character evidence and should not have been admitted. *Id.* at 496, 589 S.E.2d at 781. He also concluded that the admission was not harmless because there was not overwhelming evidence of Petitioner's guilt. *Id.*

This Court has held that a trial judge must conduct a balancing test to determine whether remote convictions are admissible under Rule 609(b), SCRE. *State v. Colf,* 337 S.C. 622, 626, 525 S.E.2d 246, 248 (2000). Rule 609(b) creates ·a presumption that remote convictions are inadmissible and places the burden on the State to overcome this presumption. *Id.* When considering whether to admit prior convictions, a trial judge should consider the following factors:

(1) The impeachment value of the prior crime;

(2) The point in time of the conviction and the witness's subsequent history;

(3) The similarity of the past crime and the charged crime;

(4) The importance of the defendant's testimony; and

(5) The centrality of the credibility issue.

*Id.* at 627, 525 S.E.2d at 248. After the trial court conducts the balancing test, the judge must make a determination and articulate, on the record, the specific reasons for his ruling. *Id.* Specifically, the trial judge must articulate why the probative value of the prior conviction outweighs its prejudicial

effect. *State v. Johnson*, 363 S.C. 53, 59–60, 609 S.E.2d 520 (2005).[1]

■ Under Rule 609(a)(2), SCRE, if a crime is viewed as one involving dishonesty, the court must admit the prior conviction because, prior convictions involving dishonesty or false statement must be admitted regardless of their probative value or prejudicial effect. Thus, Petitioner's convictions for shoplifting and writing bad checks were properly admitted and Petitioner does not dispute this. The issue is whether the prior firearms convictions involve dishonesty or false statements so as to be admissible without weighing the probative value of their admission with its prejudicial effect.

■ Violations of narcotics laws are generally not probative of truthfulness. *See State v. Cheeseboro*, 346 S.C. 526, 552 S.E.2d 300 S.C. (2001) (citing *State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000)). Furthermore, a conviction for robbery, burglary, theft, and drug possession, beyond the basic crime itself, is not probative of truthfulness. *United States v. Smith*, 181 F.Supp.2d 904 (N.D.Ill.2002). Likewise, firearms violations also are not generally probative of truthfulness. Accordingly, Petitioner's prior firearms convictions do not involve dishonesty and their probative value should have been weighed against their prejudicial effect prior to their admission pursuant to Rule 609(a)(1).

In admitting the prior firearms convictions, the trial judge noted that "the fact that he may tend to get in trouble from time to time, while it has a certain amount of prejudice in it, also, does include that issue of whether or not he's worthy of belief." The trial judge did not address the similarity of the prior convictions to the current charges as required by *Colf*. Additionally, we note that when the prior offense is similar to the offense for which the defendant is on trial, the danger of

---

1. Although *Colf* involved the admission of remote convictions under Rule 609(b), the "[Court of Appeals] has implicitly recognized the value of these factors in making such a determination under Rule 609(a)(1), and urged the trial bench to not only articulate its ruling, but to also provide the basis for it, thereby clearly and easily informing the appellate courts that a meaningful balancing of the probative value and the prejudicial effect has taken place as required by Rule 609(a)(1)." *State v. Martin*, 347 S.C. 522, 530, 556 S.E.2d 706, 710 (Ct.App.2001) (internal quotation marks omitted).

unfair prejudice to the defendant from impeachment by that prior offense weighs against its admission. *See e.g., Colf,* 337 S.C. at 628, 525 S.E.2d at 249. Petitioner's prior firearms convictions had nothing to do with Petitioner's credibility and, their admission was more prejudicial than probative, especially in light of the offenses for which he was on trial. Accordingly, we hold the trial court erred in admitting Petitioner's prior firearms convictions.

■ The State, however, contends even if the trial court erred, the admission of Petitioner's prior convictions was harmless. We disagree.

■ Error is harmless where it could not reasonably have affected the result of the trial. *In re Harvey,* 355 S.C. 53, 584 S.E.2d 893 (2003). Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard,* 303 S.C. 172, 399 S.E.2d 595 (1991). Thus, an insubstantial error not affecting the result of the trial is harmless where a defendant's guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached. *State v. Bailey,* 298 S.C. 1, 377 S.E.2d 581 (1989). The circumstances of each individual case are to be considered.

Additionally, "this Court has placed great emphasis on the importance of a defendant's right to assert self-defense when there is *any evidence* to support it." *State v. Taylor,* 356 S.C. 227, 235, 589 S.E.2d 1, 5 (2003) (emphasis added). In acknowledgement of this important right, our Court has made every effort to assure that the burden remains on the State to disprove self-defense. *See State v. Burkhart,* 350 S.C. 252, 565 S.E.2d 298 (2002); *State v. Addison,* 343 S.C. 290, 540 S.E.2d 449 (2000); *State v. Wiggins,* 330 S.C. 538, 500 S.E.2d 489 (1998).

In this case, Petitioner's defense was that he acted in self-defense, and this hinged entirely on his own testimony. Moreover, the only witnesses to the shooting were Petitioner and the victim. Although, the record contains evidence which may undermine Petitioner's self-defense theory, the record also contains evidence which supports Petitioner's self-defense theory. Therefore, the State should not be allowed to attack the defendant's credibility with inadmissible prior convictions; es-

pecially where the Petitioner's credibility was essential to his defense. Accordingly, we hold the improper admission of Petitioner's prior firearms convictions was not harmless.

## CONCLUSION

Based on the foregoing, we hold the improper admission of Petitioner's prior firearms convictions was erroneous and does not qualify as harmless error. Accordingly, we hold his murder conviction should be

**REVERSED.**[2]

MOORE, PLEICONES, JJ., and Acting Justice JAMES C. WILLIAMS, concur.

BURNETT, J., dissenting in a separate opinion.

BURNETT, J.:

I agree with the majority's conclusion the trial court erred in admitting Petitioner's prior firearms convictions. However, I disagree with the majority's harmless error analysis. Therefore, I respectfully dissent.

Error is harmless where it could not reasonably have affected the result of the trial. *In re Harvey*, 355 S.C. 53, 63, 584 S.E.2d 893, 897 (2003). The materiality and prejudicial character of the error must be determined from its relationship to the entire case. *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard*, 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991). Thus, an insubstantial error not affecting the result of the trial is harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached. *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989). Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained. *Arnold v. State*, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992).

---

2. At trial, Petitioner admitted he was guilty of unlawful possession of a weapon by a convicted felon and his self-defense argument went to only the murder charge. Accordingly, his conviction for unlawful possession of a weapon stands.

Where a review of the entire record establishes the error is harmless beyond a reasonable doubt, the conviction should not be reversed. *State v. Pickens*, 320 S.C. 528, 531, 466 S.E.2d 364, 366 (1996).

To establish self defense: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger. *State v. Bryant*, 336 S.C. 340, 344–45, 520 S.E.2d 319, 321–22 (1999); *State v. Goodson*, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994).

At trial, Petitioner argued he acted in self defense and this defense hinged entirely on his own testimony. In my opinion, Petitioner's exculpatory story of self defense is not plausible.

Petitioner testified he was living at Days Inn, where he met the victim, Austin, earlier in the week. He testified on July 22, 1999, he went to Bottoms Up, a strip club, where he met Austin. He and Austin had several alcoholic drinks during the evening. Austin repeatedly asked Petitioner if he had any "weed" or knew where to find any "weed," but Petitioner repeatedly told Austin he did not. Around 3:30 a.m. Petitioner left the club to go back to the hotel and Austin followed him. The two men had a fist fight in the parking lot of Bottoms Up, and Petitioner testified Austin did not possess a weapon during the fight. He and Austin continued towards the hotel, but they got into another fist fight during which Petitioner fell out of his wheelchair. Austin kicked Petitioner in the face and eventually helped him back into his wheelchair. The two men then proceeded to Petitioner's room, where they again had an altercation in front of the room. Petitioner fell out of his wheelchair during this incident, and Austin helped

him back into the wheelchair. At this point, Austin left and went to the hotel desk clerk to get a room key.

Kevin Hawkins testified he saw Petitioner alone in the corridor between 3:30 a.m. and 4:00 a.m. Petitioner asked Hawkins to tell the front desk clerk he had been robbed and needed help. Hawkins testified Petitioner had a scrape on his nose and he informed the front desk of Petitioner's request.

Petitioner testified as he opened the door to his room, Austin reappeared. Austin then followed Petitioner inside, closed the door, and demanded "weed." Petitioner testified he thought Austin would kill him and that another person was with Austin. He further testified Austin was not armed.

Petitioner then went to the nightstand and retrieved a loaded pistol. He shot Austin six times and Austin fell, got back up, and ran out of the room. Petitioner then went to the dresser and retrieved a loaded shotgun. He went into the breezeway where he saw Austin leaning against the wall.[3] Petitioner fired the shotgun five times because he thought Austin had not been previously hit. He then went back into the room, reloaded both guns, and shot out into the hallway from the room. Petitioner eventually shot himself in the stomach before being apprehended by police after a stand-off.

In my opinion, Petitioner's guilt was conclusively proven by competent evidence such that no other rational conclusion could have been reached. Petitioner testified that after he shot the unarmed Austin six times, Austin ran out of the room. See State v. Light, 363 S.C. 325, 610 S.E.2d 504 (Ct.App.2005) (unarmed victim did not pose a threat to armed defendant and the defendant could not have reasonably believed she did.) Further, Petitioner followed Austin out into the hallway and continued shooting, even though he was not sure it was Austin in the hallway.

Significantly, the ballistics evidence does not support Petitioner's claims. The State's ballistics experts testified the pistol shots were fired through the hotel room door. Further, an officer testified he did not see any blood in the hotel room

---

3. Petitioner testified he was not sure if the person in the breezeway was Austin.

which is inconsistent with Austin having fallen after being shot several times while in the hotel room.

Even though the trial court erred in admitting Petitioner's prior convictions, the error was harmless because the evidence fails in any respect to support Petitioner's self-defense theory. A reasonably prudent person would not have believed Petitioner had to shoot Austin repeatedly through a door, reload, follow him into the hallway, and again shoot him in the hallway in order to save himself from serious bodily harm or the loss of his life. Accordingly, the admission of the prior firearms convictions was harmless.