*115 Justice HEARN.
I concur with that portion of the majority opinion holding the trial court erred in admitting the expert testimony of Elliott and Griggs. However, I believe the errors in this case were not harmless and I would reverse. Accordingly, I dissent.
Harmless error exists to enforce criminal procedural safeguards while ensuring that inconsequential, technical errors do not result in a new trial. See Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Error is harmless when it could not reasonably have affected the result of the trial.[14] State v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). Whether an error is harmless depends on the facts of the particular case. Id.
*116 As the majority holds, the trial court erred in qualifying Elliott as an expert witness, and furthermore, it erred in allowing Elliott to testify that Stepsister made a disclosure of abuse to Gist in 2004.[15] The majority finds Elliott’s testimony “did little if any harm” because other witnesses independently confirmed Stepsister’s disclosure. Respectfully, this finding is conclusory. None of the three witnesses identified by the majority — Victim, Victim’s mother, and Dr. Saunders — were qualified as expert witnesses in this case, and thus none were in an equal position to influence the jury. See State v. Kromah, 401 S.C. 340, 357, 737 S.E.2d 490, 499 (2013) (“[A]l-though an expert’s testimony theoretically is to be given no more weight by a jury than any other witness, it is an inescapable fact that jurors can have a tendency to attach more significance to the testimony of experts.”). By ignoring Elliott’s impact as an expert witness, the majority undermines its own conclusion as to the impropriety of her testimony, and overlooks the broader importance of Stepsister’s credibility in the case against Chavis.
Additionally, the trial court erred in permitting Griggs to testify as an expert that she recommended Victim not be around Chavis for any reason. As the majority points out, Griggs’ testimony was improper because the only logical inference to be drawn was that she believed Victim was telling the truth about being abused by Chavis. See State v. Jennings, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (“For an expert to comment on the veracity of a child’s accusations of sexual abuse is improper.”); State v. McKerley, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012) (“[W]itnesses are generally not allowed to testify whether another witness is telling the truth.”).
The majority minimizes the possible effect of this improper bolstering by asserting that Chavis’s crimes “were established by evidence independent of both Mrs. Griggs and Victim.” However, the majority cites only to photographs found on *117 Chavis’s computer, medical evidence that Victim had chlamydia coupled with evidence that Chavis was taking medications used to treat chlamydia, and testimonial evidence of other witnesses in the case. I cannot agree this evidence provides overwhelming proof of guilt taken independently of the errors in this case.
As to the photographs found on Chavis’s computer, it is true that some show Victim and her mother in their underwear. However, the photographs do not display any nudity or sexual conduct. Furthermore, the only evidence that Chavis took the pictures or even knew of their existence was testimony from the Victim, whose credibility had been improperly bolstered by the admission of Griggs’ testimony, and Victim’s mother.
As to Victim’s chlamydia, she admitted having sex with her boyfriend prior to being diagnosed, making it possible Victim could have contracted chlamydia through that sexual conduct. The only evidence tying Victim’s chlamydia to Chavis was testimony by a police officer with no medical training that Chavis was taking antibiotics commonly used to treat chlamydia, and had a number of urinary tract infections consistent with chlamydia. However, the officer could not say with any degree of certainty that Chavis actually had chlamydia. Additionally, Chavis introduced evidence his antibiotics are prescribed for a wide range of illnesses in addition to chlamydia.
Finally, the majority relies on testimony from Stepsister, Chavis’s two sisters, and Victim’s mother. As to Stepsister’s testimony, the majority cannot have it both ways; if her testimony is merely cumulative to hold harmless Elliott’s improper testimony, it cannot also be central to overcome Griggs’ testimony. Stepsister’s credibility was improperly bolstered by Elliott, as discussed above, and thus her testimony should not be the primary piece of evidence that shows the jury would have reached the same result had the errors not occurred. As to the testimony of Chavis’s sisters, each stated they were sexually abused by Chavis as children. Even accepting their testimony as true, the fact that Chavis abused his sisters over thirty years ago is weak circumstantial evidence-at best-that he abused Victim.[16] In regards to Victim’s moth *118 er’s testimony, it is noteworthy that she never witnessed nor testified to any sexual conduct between Chavis and Victim. Although she testified about behavior that may rise to the level of contributing to the delinquency of a minor (for example she testified Chavis had Victim in the shower assisting him with bathing while Victim was not wearing a bra), this is not the crime for which the majority finds overwhelming evidence of guilt.[17]
Viewed as a whole, the errors in this case were not harmless because they reasonably could have affected the end result of the trial. In my view, the majority’s opinion — which allows it to sit as a second jury in the case and weigh the evidence against Chavis — employs a dangerously broad harmless error analysis to sanitize serious errors by the trial court.
Therefore, because I believe the errors in this case were not harmless, I would reverse and remand for a new trial.

. Although not raised by the parties or the majority, I would note this Court has shifted frequently in its approach to harmless error review between the contribute to the verdict standard, which focuses on an error’s impact on the jury, and the overwhelming evidence standard, which focuses on the weight of the evidence in general. Compare State v. Tapp, 398 S.C. 376, 389, 728 S.E.2d 468, 475 (2012) ("The key factor for determining whether a trial error constitutes reversible error is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' ” (quoting State v. Charping, 313 S.C. 147, 157, 437 S.E.2d 88, 94 (1993))), with State v. Bryant, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006) ("[A]n insubstantial error not affecting the result of the trial is harmless where a defendant’s guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.”); see also Lowry v. State, 376 S.C. 499, 510, 657 S.E.2d 760, 766 (2008) (applying a hybrid of the two standards); State v. Fletcher, 379 S.C. 17, 25, 664 S.E.2d 480, 484 (2008) (stating both standards together as the harmless error standard). Most other courts, including the United States Supreme Court, struggle with similar inconsistency. Compare Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (applying the overwhelming evidence standard), with Chapman, 386 U.S. at 24, 87 S.Ct. 824 (applying the contribute to the verdict standard); see Roger A. Fairfax, Jr., Harmless Constitutional Error and the Institutional Significance of the Jury, 76 Fordham L.Rev.2027, 2037 (2008) ("Since [Harrington'], the Court has shifted between the two standards — harmlessness based upon whether the error contributed to the verdict and harmlessness based upon whether the residual evidence was overwhelming — in applying the harmless error rule.”). However, even under the less stringent overwhelming evidence standard used by the majority, the errors in this case were not harmless beyond a reasonable doubt.

. The concurrence misapprehends this holding by suggesting it is distinct from that of the majority. As noted, I fully concur in the majority's conclusion it was error for the trial court to allow Elliot to testify about Gist’s report because it was error for Elliot to be qualified as an expert in the first place. My disagreement with the majority lies only in its harmless error analysis.

. Although Chavis did not object to this evidence, had he, its admissibility would be in serious doubt. See Rule 404(b), SCRE ("Evidence of *118 other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.”).

. The majority’s analysis also overlooks the fact that Chavis elicited evidence in support of his theory that the group of Victim, mother, and sisters was falsely accusing him in order to gain ownership of his house and surrounding property.