732 S.E.2d 880

The STATE, Respondent,

v.

Jason Ervin BLACK, Petitioner.

Appellate Case No.2010–173048.

No. 27176.

Supreme Court of South Carolina.

Heard June 7, 2012.
Decided Oct. 3, 2012.

12

14

Appellate Defender Breen Richard Stevens, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Robert Mills Ariail, of Greenville, Respondent.

Justice BEATTY.

Jason Ervin Black (Petitioner) appeals his convictions for criminal sexual conduct (CSC) with a minor in the first degree and committing a lewd act upon a minor. Petitioner contends the trial court committed reversible error in allowing the State to impeach his defense witness with two manslaughter convictions that were more than ten years old because their introduction violated Rules 404 and 609 of the South Carolina Rules of Evidence (SCRE), and the error was not harmless beyond a reasonable doubt. We affirm.

## I. FACTS

Petitioner was charged with the above offenses as the result of an alleged encounter that occurred with A.T. (the Minor) at the home of Petitioner's friend and neighbor, Richard Bush, on May 6, 2006. Petitioner was then 26 and the Minor was 15.

At trial in June 2007, the Minor asserted that she went to Bush's one-bedroom trailer on the evening of May 6, 2006 and that she and Petitioner had consensual sex in the bedroom while Bush remained in the living room watching TV. Petitioner acknowledged that he and the Minor were at Bush's home on May 6, 2006, but he denied the Minor's allegations of sexual misconduct and maintained they had just watched TV together until she left later that evening with a friend. Bush corroborated Petitioner's version of events, stating all three of them had remained in the living room watching TV until the Minor left with a friend who came by and picked her up. Bush was the only witness for the defense other than Petitioner.

Prior to the State's cross examination of Bush, a bench conference was held regarding the State's request to use Bush's prior convictions for impeachment purposes. Bush was sentenced in Florida on March 12, 1987 to a total of twenty-two years in prison for two counts of manslaughter and one count of "shooting/throwing a deadly missile."[1] Bush was

---

1. The specific provision regarding the deadly missile offense was not identified at trial, but we note that Florida law makes it a crime to shoot at or into, or to throw a deadly missile (a stone or other hard object that could cause serious bodily harm or death) at or within, a home, building, vehicle, plane, or other area described in the statute. Fla. Stat. Ann. § 790.19 (2007).

16

given concurrent prison sentences of fifteen years on each count of manslaughter and a consecutive seven years on shooting/throwing a deadly missile. He was released from confinement by Florida authorities on March 1, 1993, after serving approximately six years of his twenty-two year sentence.

The trial court ruled Bush's 1987 Florida convictions could be used for impeachment purposes. Thereafter, the State impeached Bush by asking about his prior convictions, which Bush acknowledged.

Petitioner was convicted of CSC with a minor in the first degree and committing a lewd act upon a minor, and he was given concurrent prison sentences of twenty years and fifteen years, respectively. The Court of Appeals affirmed pursuant to Rule 220, SCACR. *State v. Black*, Op. No.2010–UP–370 (S.C. Ct.App. filed July 19, 2010). This Court granted a petition for a writ of certiorari.

## II. STANDARD OF REVIEW

In criminal cases, an appellate court sits to review only errors of law, and it is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 625 S.E.2d 216 (2006); *State v. Wilson*, 345 S.C. 1, 545 S.E.2d 827 (2001).

"The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001); *see also State v. Dunlap*, 346 S.C. 312, 324, 550 S.E.2d 889, 896 (Ct.App.2001) ("The admission of evidence concerning past convictions for impeachment purposes remains within the trial judge's discretion, provided the judge conducts the analysis mandated by the evidence rules and case law.").

"An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011) (citation omitted). To warrant reversal, an error must result in preju-

dice to the appealing party. *State v. Commander*, 396 S.C. 254, 721 S.E.2d 413 (2011).

## III. LAW/ANALYSIS

On appeal, Petitioner contends the trial court erred in allowing the State to use the two Florida manslaughter convictions to impeach Bush, his only corroborating defense witness, because their admission violated Rules 404 and 609, SCRE. Petitioner asserts the convictions were presumptively inadmissible because they were more than ten years old and, thus, remote, and the State bore the burden of establishing facts and circumstances to substantially overcome that presumption, citing *State v. Colf*, 337 S.C. 622, 525 S.E.2d 246 (2000). Petitioner asserts the evidence that his corroborating witness had been convicted of manslaughter two decades earlier was not probative of truthfulness and, under Rule 609(b), the convictions were not properly admitted to impeach his witness's credibility. Petitioner further contends the error was not harmless beyond a reasonable doubt.[2] We agree that the admission of the manslaughter convictions was improper; however, for reasons to be discussed, we believe the error was harmless.

### A. Impeachment of Witness with Prior Convictions

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. In contrast, the general rule on impeaching a witness's credibility is that a witness, other than the accused, may be impeached with a prior conviction that carries a sentence of more than one year.[3] *See* Rule 609(a)(1), SCRE (stating "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403,[4] if the crime was

---

2. Petitioner raises no issue on appeal concerning the missile offense, so it is not addressed here except in the context of harmless error.

3. Crimes involving dishonesty or false statement may be admitted for impeachment purposes regardless of the punishment. Rule 609(a)(2), SCRE.

4. Rule 403, SCRE provides relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

punishable by death or imprisonment in excess of one year under the law under which the witness was convicted").

Rule 609(b), however, contains a time limit that establishes a presumption against the admissibility of remote convictions, i.e., those more than ten years old, for impeachment unless the trial court expressly finds the probative value of the conviction "substantially outweighs" its prejudicial effect. *State v. Johnson*, 363 S.C. 53, 609 S.E.2d 520 (2005). The rule provides in relevant part:

> **(b) Time Limit.** Evidence of a conviction under this rule *is not admissible* if a period of *more than ten years* has elapsed since the date of the conviction or *of the release* of the witness from the confinement imposed for that conviction, *whichever is the later date, unless* the court determines, in the interests of justice, that *the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.*

Rule 609(b), SCRE (emphasis added). The State bears the burden of establishing sufficient facts and circumstances to overcome the presumption against the admissibility of remote convictions. *State v. Bryant*, 369 S.C. 511, 633 S.E.2d 152 (2006); *State v. Colf*, 337 S.C. 622, 525 S.E.2d 246 (2000).

The standard in Rule 609(b) pertaining to *remote* convictions is higher than the standard of Rule 609(a)(1), by which certain convictions that are not more than ten years old are admissible if their probative value simply "outweighs," rather than "substantially outweighs," their prejudicial effect. *Compare* Rule 609(a)(1) *with* Rule 609(b); *see also United States v. Cavender*, 578 F.2d 528, 531 (4th Cir.1978) (observing this distinction). As is stated in the Senate Report on the Rules of Evidence, "It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *Clay v. State*, 290 Ga. 822, 725 S.E.2d 260, 273 (2012) (discussing the federal rule, upon which many state provisions are based) (quoting U.S. Code Cong. & Admin. News, 93d Cong., 2d Sess. at p. 7062 (1974)); *see also Cavender*, 578 F.2d at 532 n. 8 (noting the presence of the cautionary

---

prejudice. "Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one." *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001).

language in the Senate Report and observing that the trial court's discretionary balancing power should be exercised "in a very limited way" (citation omitted)).

This Court has stated that federal cases are persuasive since our rule is based on the federal rule, and we have noted that "[t]he Fourth Circuit has explicitly held that evidence of remote convictions should only be admitted for impeachment purposes 'in exceptional circumstances.'" *Colf*, 337 S.C. at 626, 525 S.E.2d at 248 (quoting *Cavender*, 578 F.2d at 530).

■ In performing the balancing test required by Rule 609(b), the trial court shall determine whether the probative value of the conviction substantially outweighs the prejudice of its admission after carefully balancing the interests involved and articulating for the record the specific facts and circumstances supporting its decision. *Colf*, 337 S.C. at 629, 525 S.E.2d at 249. Thus, the trial court must state not only whether the probative value of the prior conviction substantially outweighs the prejudicial effect, but also *why*. *Bryant*, 369 S.C. at 516–17, 633 S.E.2d at 155.

■ This Court has enumerated at least five factors that a trial court should consider in determining, in the interests of justice, whether the probative value of a prior conviction substantially outweighs its prejudicial effect: (1) the impeachment value of the prior crime, (2) the point in time of the conviction and the witness's subsequent history, (3) the similarity between the past crime and the charged crime, (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue. *Colf*, 337 S.C. at 627, 525 S.E.2d at 248 (citing the Fourth Circuit's analysis in *United States v. Cavender*, 578 F.2d 528 (4th Cir.1978) and *United States v. Beahm*, 664 F.2d 414 (4th Cir.1981)).

*Colf* involved the impeachment of a defendant, so some of these factors must, as a practical matter, be adjusted for this particular case, which involves the convictions of a non-defendant. *See id.* ("These factors are not exclusive," and "trial courts should exercise their discretion in light of the facts and circumstances of each particular case.").

Bush's prior convictions date from March 1987, and he was released from confinement in March 1993. The trial in this

matter occurred in June 2007, some twenty years after his convictions and more than fourteen years after his release. Thus, it is undisputed that Bush's manslaughter convictions were remote as more than ten years had elapsed since his release from confinement, and the convictions were presumptively inadmissible under Rule 609(b), SCRE.

The trial court acknowledged that it needed to determine, pursuant to Rule 609(b), whether or not the probative value of the remote convictions substantially outweighed their prejudicial effect. The State argued the convictions were admissible "because the crimes are so heinous that they show a character flaw that should be brought out [to] the jury so they can determine whether or not to believe this man under oath. Anybody who would kill two people is not as trustworthy as a car thief." The State also argued the convictions pertained to a witness, not the defendant, so "[w]e are not impinging on the Defendant's rights. We are talking about bringing all the matters to the jury's attention so they can evaluate his credibility one way or another."

The trial court concluded the State could use the convictions to impeach Bush, noting "a charge of manslaughter has a very high impeachment value." The court stated that, although the convictions were remote, given the seriousness of the crimes, Bush's actual time served seemed relatively short. In this regard, the court noted that, under South Carolina law, Bush likely would have faced a longer sentence and that if Florida authorities had required Bush to serve the sentences as originally given, then Bush "would have been released well within the ten-year time limit." The court stated that, based on this reasoning, the remoteness of the convictions was "diminished a little and it's almost like it's not as remote."

The trial court remarked that the similarities between the past crime and the crime charged was a factor that was more relevant in cases concerning the impeachment of a defendant and the crimes were not similar, in any event. The trial court found the witness's testimony was "critical," stating if Bush's "testimony is true, then it means that this crime could not have even happened at all. . . . That, of course, makes . . . his credibility essential." The trial court concluded after "weighing

those factors" that "the probative value of the convictions substantially outweigh[ed] their prejudicial effect."

Although the trial court cited the correct standard and attempted to perform a balancing test, we believe the trial court failed to adequately assess the probative value of the remote convictions before balancing the probative value of the convictions with their prejudicial effect. In addition, we disagree with the court's application of several of the pertinent factors in applying the balancing test. In our view, the first two factors, the impeachment value of the prior convictions and the witness's subsequent history, do not weigh in favor of admissibility in this case. The manslaughter offenses, while crimes of violence, are not crimes of dishonesty or untruthfulness that directly impact the witness's veracity. In addition, there is no evidence the witness has been convicted of any additional crimes since his release from confinement some fourteen years prior to trial. We agree with the trial court that the third factor, the similarity of the conduct, is of no consequence here. The fourth and fifth factors, which overlap somewhat, concern the witness's credibility, which was important in this case. However, this, in itself, is not determinative of admissibility. The admission of the remote convictions was certainly prejudicial, and considering all of the circumstances, the State has not met its high burden of establishing that the prejudicial effect of the convictions was *substantially outweighed* by their probative value.

■ The starting point in the analysis is the degree to which the prior convictions have probative value, meaning the tendency to prove the issue at hand—the witness's propensity for truthfulness, or credibility. *See Fletcher v. People,* 179 P.3d 969, 974 (Colo.2007) ("To have probative value, evidence must have a tendency to prove the proposition for which it is offered."); *Hopkins v. State,* 639 So.2d 1247, 1252–53 (Miss. 1993) (observing the State must first show the prior conviction has probative value on the issue of the witness's propensity for truthfulness, as this is the issue with respect to which the prior conviction must be relevant if it is to be admissible, and this threshold burden should be met before the trial court engages in a balancing test (citation omitted)). The tendency to impact credibility, in turn, determines the impeachment value of the prior conviction. Impeachment value refers to

how strongly the nature of the conviction bears on the veracity, or credibility, of the witness. 33A Federal Procedure, Lawyers Edition § 80:176(2003).

 "Under the Rule, the pivotal issue of the probative value of a conviction turns largely on a consideration of the nature of the conviction itself." *Cavender,* 578 F.2d at 534. "This follows because the purpose of impeachment is not 'to show that the [witness] who takes the stand is a "bad" person but rather to show background facts which bear directly on whether jurors ought to believe him....'" *Id.* (citation omitted). "Accordingly, in general it is a conviction which bears on 'whether jurors ought to believe' the witness or party that qualifies for impeachment purposes." *Id.*

"The crimes which are generally spoken of as meeting this test of giving a basis for an inference of a 'propensity to lie' and which 'bear directly on whether jurors ought to believe him' are those which 'rest on dishonest conduct,' *Gordon v. United States* [383 F.2d 936, 940 (D.C.Cir.1967)], or carry 'a tinge of falsification,' *United States v. Ortega* [561 F.2d 803, 806 (9th Cir.1977)], or involve "'some element of deceit, untruthfulness, or falsification,'" *United States v. Thompson* [559 F.2d 552, 554 (9th Cir.1977)]." *Id.*

 A rule of thumb is that convictions that rest on dishonest conduct relate to credibility, whereas crimes of violence, which may result from a myriad of causes, generally do not. *See Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967) ("In common human experience acts of deceit, fraud, cheating, or stealing ... are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not.... The nearness or remoteness of the prior conviction is also a factor of no small importance." (footnote omitted)); *see also State v. Redmond,* 803 N.W.2d 112, 122–23 (Iowa 2011) (recognizing that violent crimes and remote crimes have less probative value than those involving

dishonesty; the court stated counsel may attempt to show a witness's testimony is unpersuasive in a number of ways besides prior conviction evidence, such as showing bias, a motive to lie, or flaws in the witness's perception).

In the current appeal, the trial court stated the manslaughter convictions had "a very high impeachment value," but we note that "[t]he impeachment value of crimes that involve deception is higher than crimes that involve violence, and the latter have a higher potential for prejudice." *Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App.1992) (en banc) (citing *United States v. Jackson*, 627 F.2d 1198, 1210 (D.C.Cir. 1980)). Although the convictions arguably raise a concern as to Bush's general character, it is more narrowly his propensity for telling the truth, i.e., his credibility, that is properly placed at issue under Rule 609(b). The rule allows impeachment of a witness only as to his or her credibility, not as to all aspects of the witness's character. *See State v. Ross*, 329 N.C. 108, 405 S.E.2d 158, 165 (1991) (In applying the "critical balancing process [of Rule 609(b) ] it is important to remember that the only legitimate purpose for introducing evidence of past convictions is to *impeach the witness's credibility*," not the witness's general character, and "[t]he use of this rule is necessarily limited by that focus." (citation omitted)).

The manslaughter convictions, while crimes of violence, are not particularly probative of the specific trait of truthfulness; consequently, their impeachment value is limited.[5] *See Lenard v. Argento*, 699 F.2d 874, 895 (7th Cir.1983) (noting remote convictions should be admitted only under very rare and exceptional circumstances and holding the witness's

---

5. Petitioner concedes that Rule 609 abandons the "moral turpitude" standard, but asserts "it should nevertheless be noted that manslaughter was not considered a crime of moral turpitude and was inadmissible to impeach the credibility of a witness," citing *Mitchell v. State*, 298 S.C. 186, 189, 379 S.E.2d 123, 125 (1989) ("In South Carolina, manslaughter is not a crime of moral turpitude."). In *Mitchell*, this Court found error in the trial court allowing the State to impeach the defendant's credibility with evidence of his prior New York manslaughter conviction on the basis the conviction did not relate to a crime involving moral turpitude. *Id.* at 189–90, 379 S.E.2d at 125. This Court has stated that the moral turpitude test is no longer relevant under a Rule 609 analysis. *See, e.g., Green v. State*, 338 S.C. 428, 432, 527 S.E.2d 98, 100 (2000) ("[T]he new evidentiary rule removes the necessity of determining whether a crime is one of moral turpitude.").

remote voluntary manslaughter conviction was unrelated to his truth-telling capabilities and was properly barred as impeachment evidence); *United States v. Johnson*, 47 F.Supp.2d 1329, 1331–32 (D.Utah 1999) (holding attempted manslaughter is a crime of violence, not a crime of dishonesty or false statement, so it does not directly involve veracity and has only "a limited amount of probativeness as to honesty"); *Gov't of Virgin Islands v. Solis*, 475 F.Supp. 542, 543 (D.Vi.1979) (holding the trial court did not err in excluding evidence of the victim's conviction for involuntary manslaughter that was more than ten years old as the crime "has no bearing on the issue of truthfulness or untruthfulness"; the court stated "Rule 609 countenances the use of prior convictions when those prior convictions involve some element of deceit, untruthfulness or falsification which would tend to show that an accused or a witness would be likely to testify untruthfully"); *Mason v. State*, 756 P.2d 612, 614 (Okla.Crim.App.1988) (stating manslaughter is not a crime involving dishonesty or untruthfulness).[6]

In this case, the trial court did not relate any specific facts or circumstances, other than the mere existence of the convictions, that made them particularly probative of Bush's credibility.[7] In *State v. Ellerbee*, —— N.C.App. ——, 721 S.E.2d

---

6. In general, many serious crimes, even those involving violence, do not directly impact a witness's veracity. *See generally Cavender*, 578 F.2d at 534 n. 19 ("Many crimes, [ ] while perhaps causing the average man to shun their perpetrator, do not upon analysis support the inference that the person who committed them has a specific proclivity for lying on the witness stand." (citation omitted)); *State v. Bryant*, 369 S.C. 511, 517–18, 633 S.E.2d 152, 155–56 (2006) (observing "a conviction for robbery, burglary, theft, and drug possession, beyond the basic crime itself, is not probative of truthfulness," and also that "Petitioner's prior firearms convictions had nothing to do with Petitioner's credibility"); *State v. Cheeseboro*, 346 S.C. 526, 552 S.E.2d 300 (2001) (holding remote convictions for housebreaking and grand larceny were properly excluded under the ten-year limit of Rule 609(b) as the State failed to show why the ten-year limit should be overridden; the court stated the offenses were not generally considered probative of truthfulness); *see also* 1 McCormick on Evidence § 42, at 189–90 (6th ed.2006) (stating federal courts and most state courts do not classify violent offenses such as robbery and possession of a weapon as crimes of dishonesty or falsity).

7. The State argued the prior manslaughter convictions were admissible, despite their remoteness, because they involve "heinous crimes," but

296, 298 (2012), the State impeached the defendant's witness with a prior conviction for manslaughter that was outside the ten-year window of Rule 609(b); the witness was convicted in 1986 and released in 1991 (a relatively short time-span, as in this case). Although it ultimately relied upon a harmless error analysis, the North Carolina Court of Appeals held the admission of the manslaughter conviction was error because "the trial court did not make any findings as to the specific facts and circumstances regarding the probative value of this conviction." *Id.* at 298–99; *cf. State v. Howard,* 396 S.C. 173, 180–81, 720 S.E.2d 511, 515 (Ct.App.2011) ("While the trial court discussed the importance of credibility in this case, the court failed to state how Howard's prior ABHANs were probative of his credibility. The trial court instead focused on Howard's character, which does not affect the impeachment value of his prior crimes.").

The trial court's comments on the length of time Bush had actually served in prison on the Florida convictions and its reasoning that Bush would have come within the ten-year window *if* he had received or served a longer sentence under South Carolina law are not persuasive. The plain language of Rule 609(a)(1) speaks in terms of "the law under which the witness was convicted," thus we believe South Carolina's possible treatment of the offense is not relevant in this context. Moreover, the plain language of subsection (b) refers expressly to the date of a party's release from confinement, without any qualifying language. It is undisputed that Bush had been released from confinement more than fourteen years prior to this trial, and his convictions were already twenty years old. Thus, despite the short time served on his sentence, the rationale behind the rule—that the more time that has elapsed since the person's confinement, the less relevant is the fact of the prior confinement—is still served.

A line must always be drawn somewhere, and to disregard the rule's time limit on remote convictions based on such suppositions would vitiate the entire purpose of the rule, which is to settle the question how old a conviction must be to be

this does not address their probative value on the issue of veracity. There is no blanket exemption from the ten-year rule of Rule 609(b) for convictions of "heinous crimes" such as murder or manslaughter.

presumptively prejudicial and inadmissible. *See United States v. Nguyen,* 542 F.3d 275, 281 (1st Cir.2008) (stating "Rule 609(b) draws a bright line test at ten years—and whenever the law draws a line, some events will fall on the 'other' side," and if the lines are redrawn based on the vagaries of every case or if the bright-line rule is abandoned entirely in favor of an insistence on considering the equities in each and every individual case, this "would create an arguably greater problem" in terms of maintaining "the efficient administration of justice and the ... predictability of results"); *United States v. Beahm,* 664 F.2d 414, 418 (4th Cir.1981) (finding it was immaterial if the remote conviction was "only" eleven years old because "[t]he Rule provides for no distinctions between convictions of more recent 'vintage' and older ones" as "[s]uch distinctions would vitiate the very purpose of the Rule, which is to settle the question of how old a conviction must be for its admission presumptively to" be of prejudice, and the government must meet "the heavy burden of rebutting the presumption").

This is particularly true in light of the absence of information of Bush's subsequent history since the convictions. *Cf. State v. Caruthers,* 676 S.W.2d 935, 941 (Tenn.1984) (observing remote convictions over ten years old have been determined to be admissible where there has been a continuing course of criminal conduct that is probative of credibility).

The genesis of the rule's ten-year provision was the belief that after ten years, the probative value of the conviction with respect to a person's credibility has diminished to the point where it should no longer be admissible; however, a provision was added allowing admissibility where exceptional circumstances have been demonstrated. *See State v. Russell,* 104 Wash.App. 422, 16 P.3d 664, 671 (2001) (explaining that "convictions over ten years old generally do not have much probative value," and instead of banning all convictions more than ten years old, the rule provides remote convictions may be admitted in very limited and compelling circumstances (citation omitted)).

We recognize the trial court's finding that Bush's credibility was important. However, the manslaughter convictions impact Bush's character not his veracity. Nevertheless, the

importance of Bush's credibility is not singularly determinative. *See State v. Green,* 200 Ariz. 496, 29 P.3d 271, 275 (2001) ("The state argues that because this case boils down to 'he said, she said,' the probative value of the prior convictions is great enough to carry the burden. We find this argument unpersuasive. There are many cases in which the testimony of one witness is pitted against another. To allow the admission of remote felonies in every such's wearing contest' would be to effectively defeat the policy that severely limits their use.").

In this case, the State did not meet its heavy burden of demonstrating that the prejudicial effect of the remote manslaughter convictions was *substantially* outweighed by their probative value. As a result, the trial court erred in allowing the State to use Bush's remote convictions for impeachment purposes.

### B. Harmless Error

Having found the admission of the remote manslaughter convictions was error, this Court must next consider whether their admission was, nevertheless, harmless beyond a reasonable doubt.

An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result. *State v. Bryant,* 369 S.C. 511, 633 S.E.2d 152 (2006); *see also Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992) (stating error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained); *State v. Watts,* 321 S.C. 158, 165, 467 S.E.2d 272, 277 (Ct.App.1996) ("In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such belief beyond a reasonable doubt." (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))).

"In determining harmless error regarding any issue of witness credibility, we will consider the importance of the witness's testimony to the prosecution's case, whether the witness's testimony was cumulative, whether other evidence corroborates or contradicts the witness's testimony, the extent of cross-examination otherwise permitted, and the overall

28

strength of the State's case." *State v. Fossick*, 333 S.C. 66, 70, 508 S.E.2d 32, 34 (1998); *see also State v. Mizzell*, 349 S.C. 326, 333, 563 S.E.2d 315, 318 (2002) (listing these factors for assessing harmless error, as taken from *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). *Van Arsdall* involved a Confrontation Clause violation caused by the erroneous exclusion of evidence of a prosecution witness's bias. In *State v. Holmes*, this Court specifically adopted the factors articulated in *Van Arsdall* for assessing harmless error and held these factors shall likewise apply for any error concerning witness credibility. *State v. Holmes*, 320 S.C. 259, 265, 464 S.E.2d 334, 337 (1995) ("While the harmless error ruling in *Van Arsdall* dealt specifically with witness bias, we hold that the *Van Arsdall* factors apply with equal force in determining a harmless error violation relating to any issue of witness credibility.").

On appeal, Petitioner has argued the trial court "commit[ted] reversible error by allowing the State to impeach [his] corroborating witness with two Florida manslaughter convictions from 1987." However, the State also impeached Petitioner's witness with a 1987 conviction for shooting/throwing a deadly missile. This conviction occurred at the same time as the manslaughter convictions and ostensibly arose from the same set of facts. Since Petitioner does not challenge the use of this conviction to impeach Bush's credibility, this ruling, right or wrong, becomes the law of the case. *See, e.g., Carolina Chloride, Inc. v. Richland County*, 394 S.C. 154, 714 S.E.2d 869 (2011) (stating an unchallenged ruling, right or wrong, becomes the law of the case); *Caprood v. State*, 338 S.C. 103, 525 S.E.2d 514 (2000) (observing where the appealing party does not challenge a ruling, it becomes the law of the case and will not be considered by this Court); *see also* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

Bush's unchallenged prior conviction for shooting/throwing a deadly missile involves a serious felony offense, for which Bush was given a consecutive sentence of seven

years in prison.[8] We find the jury's knowledge of this conviction unquestionably established the fact that Bush was a former convict, and it would have similarly diminished the jury's view of his character. *Cf. Mason v. State,* 756 P.2d 612 (Okla.Crim.App.1988) (holding the erroneous admission of a prior manslaughter conviction was harmless error where the witness was already impeached by other evidence of prior convictions).

We disagree with the dissent's conclusion that the error here could not be deemed harmless based on application of the *Van Arsdall* factors. The Supreme Court noted in its decision that the factors were not exclusive; further, it gave no indication that any single factor was dispositive. *See Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431 ("Whether such an error is harmless in a particular case *depends upon a host of factors,* all readily accessible to reviewing courts." (emphasis added)). The Court observed that it had "repeatedly reaffirmed the principle" that a conviction should not be set aside if a reviewing court may say, on the whole record, that the error was harmless beyond a reasonable doubt, as a defendant is entitled to a fair trial, not a perfect one. *Id.* at 681, 106 S.Ct. 1431.

In the current appeal, we believe a review of the entire record indicates the error was harmless under the circumstances. In addition to the fact that Bush's credibility had already been significantly compromised by the revelation that he was a former convict, we note, in considering the overall strength of the State's case, that Petitioner's *own* credibility was seriously impeached at trial as well by testimony that he had a criminal record that included two prior offenses for CSC with a minor. In addition, an investigator with the Pickens County Sheriff's Department testified that he had contacted Petitioner before the incident alleged here and specifically warned him that the Minor was only 15 years old. Petitioner acknowledged this conversation and conceded that he knew

---

8. This offense is identified as a felony in the second degree. Under Florida law a felony in the second degree carries a sentence of up to fifteen years, Fla. Stat. Ann. § 775.082(3)(c) (Supp.2012), which equals the fifteen-year sentence Bush actually received on his manslaughter convictions.

having a relationship with a 15–year–old could get him in "trouble."

It was undisputed that the Minor was at Bush's home to visit Petitioner the night of the incident, and there was evidence at trial that conflicted with that of Bush and Petitioner and that corroborated the Minor's version of events. For example, despite Petitioner's and Bush's testimony that the Minor never left the confines of the living room, the Minor was able to describe some of the contents of Bush's bedroom, where she maintained Petitioner had taken her to have sex. Moreover, there was corroborating evidence from Candie Hudson, who picked up the Minor from Bush's home around 11:00 p.m., that she saw blood on the Minor's underwear after they returned to Candie's home, that she helped the Minor wash the garment, and that the Minor asked to borrow another pair from her. There has been no allegation any limitation was placed on the parties' ability to conduct cross-examination. Considering the foregoing and all of the other evidence adduced at trial, we find the admission of the additional impeachment evidence against Bush could not reasonably have affected the jury's result in this case and we deem the error harmless beyond any reasonable doubt.

## IV. CONCLUSION

Rule 609(b) imposes a high standard for the admissibility of remote convictions. We conclude the factual findings and legal analysis the trial court relied upon do not demonstrate that the probative value of the remote manslaughter convictions substantially outweighed their prejudicial effect. Consequently, we hold the trial court abused its discretion in admitting these convictions. However, Petitioner does not challenge on appeal the trial court's admission of the defense witness's prior conviction for shooting/throwing a deadly missile, and this conviction was also used to impeach the witness. Since its admission is now the law of the case, we find any error in the admission of the two remote manslaughter convictions was harmless as the defense witness's character was similarly diminished by the admission of the unchallenged conviction for shooting/throwing a deadly missile, and the

record as a whole indicates the error could not reasonably have impacted the result reached in this case.

**AFFIRMED.**

TOAL, C.J., and KITTREDGE, J., concur.

PLEICONES, J., dissenting in a separate opinion in which HEARN, J., concurs.

Justice PLEICONES, dissenting.

I respectfully dissent. I agree with the majority that the Court of Appeals erred in affirming the trial court's decision to allow Bush, petitioner's only witness, to be impeached by two remote manslaughter convictions. I disagree, however, with the majority's conclusion that this improper impeachment was harmless error.

The test for determining whether an error involving a witness's credibility [9] is harmless is derived from *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *See State v. Holmes,* 320 S.C. 259, 464 S.E.2d 334 (1995); *State v. Gadsden,* 314 S.C. 229, 442 S.E.2d 594 (1994). The first inquiry is into the importance of the witness's testimony to the proponent's case, then whether the witness's testimony was cumulative and whether other evidence contradicts or corroborates this witness's testimony, and finally we look to the strength of the State's case. Here, the case was largely a credibility contest between petitioner and the victim, a classic "he said, she said" contest without any physical evidence. Bush was the only other person present at the time of the alleged incident, and his testimony was critical to petitioner's defense. While I agree that under some circumstances an error in permitting a witness to be impeached by prior convictions can be deemed harmless in light of another unobjected-to impeachment, I do not find those circumstances present here. *Compare e.g. State v. McFarlane,* 279 S.C. 327, 306 S.E.2d 611 (1983)(in lewd act prosecution, defendant's

---

9. The issue is whether the court improperly permitted Bush's credibility to be impeached by his prior conviction under Rule 609, SCRE, yet the majority at times treats the question as one of character impeachment. *See* Rule 608, SCRE. I do not agree that Rule 608 is relevant to our analysis or decision here.

erroneous impeachment with manslaughter harmless in light of proper impeachment with second degree rape conviction).

In my opinion, the erroneous impeachment of Bush by the two manslaughter convictions cannot be deemed harmless because he was also impeached by a weapons offense. *State v. Holmes, supra.* I would reverse the decision of the Court of Appeals, and remand the case for a new trial.

HEARN, J., concurs.