**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Justin Antonio Butler, Appellant.

Appellate Case No. 2016-001269

———————————

Appeal From Lexington County
R. Knox McMahon, Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-146
Submitted February 11, 2019 – Filed April 17, 2019
Withdrawn, Substituted, and Refiled on June 5, 2019

———————————

**AFFIRMED**

———————————

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General Sherrie Butterbaugh, all of Columbia; and Solicitor Samuel R. Hubbard, III, of Lexington, for Respondent.

———————————

**PER CURIAM:**  Justin Antonio Butler appeals his convictions for murder, attempted murder, first-degree burglary, and possession of a weapon during the commission of a violent crime.  On appeal, he argues the trial court erred in (1) denying his motion to suppress cell phone records obtained with search warrants signed by a South Carolina magistrate and sent to out-of-state phone companies and (2) qualifying a police officer as an expert in "street culture and language" and allowing him to testify about his experience with gangs.  We affirm.

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only and is bound by the trial court's factual findings unless those findings are clearly erroneous.  *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009).  Thus, on review, this court is limited to determining whether the trial court abused its discretion.  *Id.*  An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law.  *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012).  The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence."  *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

## SEARCH WARRANTS

Butler argues the trial court erred in refusing to suppress cell phone records the State obtained by issuing search warrants signed by a South Carolina magistrate to out-of-state phone companies.  We disagree.

Before trial, Butler moved to suppress cell phone records the State obtained with search warrants signed by a South Carolina magistrate and sent to out-of-state phone companies.  Butler argued the search warrants were invalid because the magistrate did not have jurisdiction outside South Carolina.  Butler noted the phone companies could voluntarily comply with the request for records, arguing "[t]he Sheriff's Department can accomplish the exact same thing . . . by just issuing simply a letter saying . . . this is an official investigation . . . please send us th[ese] items, but they chose not to do that and instead to use the search warrant form and procedures."  Butler argued there was no "limiting . . . language . . . that would put the recipient on notice that the[] search warrants ha[d] no force or applicability of the law and compliance [wa]s strictly voluntary."  Thus, Butler contended the phone companies could have turned over the information voluntarily if the State had sent a letter, but the information should be excluded because the State chose to

send invalid search warrants. The State responded by arguing Butler did not have an expectation of privacy in the phone records because the information was owned by the phone company. The trial court denied Butler's suppression motion, relying on an unpublished Michigan case[1] and finding there was no expectation of privacy in the "records held by a third-party out-of-state custodian."

Section 17-13-140 of the South Carolina Code (2014) states "any judge of any court of record of the State having jurisdiction over the area where the property sought is located, may issue a search warrant to search for and seize" property. In *State v. McKnight*, an officer obtained a search warrant to search a mobile home. 291 S.C. 110, 112, 352 S.E.2d 471, 472 (1987). The officer told the magistrate he believed drugs and stolen goods would be found inside the mobile home. *Id.* Subsequently, the magistrate filled out the search warrant form and the officer signed it. *Id.* The officer did not complete an affidavit; instead, the magistrate placed the officer under oath and the officer "orally recited the facts upon which the warrant was based." *Id.* Evidence found during the search of the mobile home was later used against the defendants at trial, and the trial court granted the defendants' motion to suppress despite the State's argument that they did not have standing to challenge the search warrant because they did not have a legitimate expectation of privacy in the searched premises. *Id.* "A search warrant that would survive constitutional scrutiny may still be defective under" section 17-13-140. *Id.* at 113, 352 S.E.2d at 472. The court stated, "[O]ne contesting the legality of a search because of a defect under [s]ection 17-13-140 need only show that the State is attempting to introduce the evidence against him." *Id.* at 115, 352 S.E.2d at 474. Our supreme court affirmed and held the defendants had standing to attack the search warrant because the constitutional question of whether they had an expectation of privacy in the place searched and the statutory question of the validity of the search warrant were two separate questions. *Id.*

We disagree with Butler that *McKnight* is controlling in this case. Butler conceded at trial that the State did not need to send a search warrant in order to obtain the cell phone records. At trial, Butler stated records held by a third-party cell phone company did not belong to him and the company could choose to turn those records over to police. Butler conceded the State could have merely sent a letter

---

[1] In an unpublished opinion, the Court of Appeals of Michigan held that an attorney was not ineffective for failing to move to suppress search warrants sent to out-of-state telephone companies because the warrants sought "only records of electronic communications that occurred in Michigan." *People v. Wilson*, 2013 WL 2360239, at *10 (Mich. Ct. App. 2013).

requesting the records to the cell phone companies. However, Butler argues on appeal the records should have been excluded because the State chose to send an invalid search warrant. *McKnight* states the question of statutory compliance of a search warrant is different than the Fourth Amendment privacy considerations. *See id.* In *McKnight*, the officer needed to first obtain a search warrant to search the mobile home because a search of a home implicates someone's privacy rights under the Fourth Amendment—whether it was the defendants' privacy rights or someone else's privacy rights. *See id.* However, in the instant case, Butler noted the owners of the cell phone records voluntarily turned the information over to the third party. Because Butler did not argue the State was required to send search warrants to obtain the cell phone records, Butler's argument regarding the validity of the search warrants has no merit. Therefore, we affirm the trial court's denial of Butler's motion to suppress and find the trial court did not abuse its discretion. *See Black*, 400 S.C. at 16, 732 S.E.2d at 884 ("The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." (quoting *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001))).

**EXPERT WITNESS**

Butler argues the trial court erred in qualifying Brian Zwolak as an expert in "street culture and language" and allowing him to testify about his gang-related training and experience. We disagree.

At trial, Zwolak testified he worked as a gang instructor at the South Carolina Criminal Justice Academy (the Academy). He began his career as a patrol officer with the City of Columbia Police Department and moved into the gang unit in 2011. As an investigator in the gang unit, Zwolak "worked violent crime cases[,] gathered intel [on] gang members," and assisted other police officers "when it came to organized crime and street gang[s]." Zwolak then accepted a position with the Academy to teach classes on street gangs. He attended the Criminal Gang Overview for Law Enforcement and Law Enforcement Response to Gangs in the Community and Graffiti Recognition classes at the Academy. He also took the Basic Gang School and Investigation and Criminal Gang Investigations courses in Mississippi. He attended the World Gangs of the Low Country Training Conference in South Carolina and took a Gang Investigations and Prosecution Techniques course taught by the federal government. He was a member of the South Carolina Gang Investigator's Association. His total amount of "gang related, street culture related training" was 225 hours. He taught the following classes at the Academy and around South Carolina: Gang Specialist, Criminal Street Gang

Investigation, Criminal Gang Overview, Criminal Gang Overview for School Resource Officers, and Gang Documentation. He testified he participated in numerous interviews and reviewed social media and music videos to "keep up with current trends and slang." The trial court qualified Zwolak as an expert in street culture and language over Butler's objection. During his testimony, Zwolak went line by line and interpreted the language used by Butler and others in text messages.

As a general rule, "all relevant evidence is admissible." Rule 402, SCRE. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE.

> Rule 702, SCRE, provides that a witness qualified as an expert may testify when scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. However, even if an expert's testimony is admissible under the rules, the trial court may exclude the testimony if its probative value is outweighed by the danger of . . . unfair prejudice, confusion of the issues, or misleading the jury.

*Wilson v. Rivers*, 357 S.C. 447, 452, 593 S.E.2d 603, 605 (2004). "Unfair prejudice means an undue tendency to suggest [a] decision on an improper basis." *State v. Spears*, 403 S.C. 247, 253, 742 S.E.2d 878, 881 (Ct. App. 2013) (quoting *State v. Gilchrist*, 329 S.C. 621, 627, 496 S.E.2d 424, 427 (Ct. App. 1998)).

We find the trial court did not err in allowing Zwolak to testify as an expert witness. The State presented no evidence that Butler, Terry McClure, or the crime itself was associated with a gang. The mention of gangs was only in relation to Zwolak's experience and training as a necessity to qualifying him as an expert witness. The only time Zwolak mentioned gangs outside of outlining his training and experience was when he indicated the term "blood" usually referred to a gang member. However, he clarified it did not mean the person who wrote the text was associated with a gang and later explained "blood" could also refer to a friend or family member. Furthermore, because of the danger of unfair prejudice associated with the word gang, the trial court gave three limiting instructions regarding Zwolak's testimony—after it qualified Zwolak as an expert witness, at the end of Zwolak's testimony, and during the jury instructions. Thus, any prejudice that may have arose because of the extensive use of the word gang in Zwolak's testimony

regarding his qualifications would have been cured by the limiting instruction. *See State v. Young*, 420 S.C. 608, 624, 803 S.E.2d 888, 896 (Ct. App. 2017) ("Limiting instructions are deemed to cure error unless 'it is probable that, notwithstanding the instruction, the accused was prejudiced.'" (quoting *State v. Smith*, 290 S.C. 393, 395, 350 S.E.2d 923, 924 (1986))); *id.* at 623, 803 S.E.2d at 896 ("We start by presuming the cure worked, for we also presume juries follow their instructions.").

Butler does not point to any specific part of Zwolak's testimony that prejudiced him, other than the fact Zwolak said the word "gang" many times while explaining his qualifications. Because the trial court repeatedly instructed the jury that there was no association between Butler or McClure and any gang, and the State did not attempt to connect Butler with a gang, we find the prejudicial effect of Zwolak's testimony was small. The State presented Zwolak's testimony to counter Butler's assertion that he was not involved in McClure's plan to rob the victims and to show a scheme between Butler and McClure. We find Zwolak's testimony had probative value and was not substantially outweighed by the mention of gangs during his testimony about his qualifications. Thus, the trial court did not abuse its discretion in allowing Zwolak to testify. *See Black*, 400 S.C. at 16, 732 S.E.2d at 884 ("The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." (quoting *Saltz*, 346 S.C. at 121, 551 S.E.2d at 244)).

Accordingly, Butler's convictions are

**AFFIRMED.**[2]

**HUFF, THOMAS, and KONDUROS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.