**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jason Black, Respondent-Petitioner,

v.

State of South Carolina, Petitioner-Respondent.

Appellate Case No. 2021-000525

Appeal From Pickens County
R. Scott Sprouse, Circuit Court Judge

Unpublished Opinion No. 2025-UP-270
Heard May 27, 2025 – Filed July 30, 2025

**REVERSED**

Appellate Defender David Alexander, of Columbia, for Respondent-Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General Kaylee Christine Kemp, all of Columbia, for Petitioner-Respondent.

**PER CURIAM:** The State appeals the post-conviction relief (PCR) court's order granting relief to Jason Black on the ground of ineffective assistance of appellate

counsel for failing to raise an issue regarding the admission of a defense witness's prior conviction. On cross-appeal, Black argues that, in the alternative, the PCR court erred in finding trial counsel was not ineffective for failing to adequately preserve the issue. We reverse.

Black was charged with criminal sexual conduct (CSC) with a minor and committing a lewd act upon a minor as a result of an incident that occurred between him and a then-fifteen-year-old girl (Victim) at the home of Richard Bush on May 6, 2006.

At trial, Victim testified she began a relationship with Black in the fall of 2005 which continued until the incident; she asserted that Black was twenty-six and she was fifteen—and that Black was aware of her age. Victim testified that on the day of the incident, she left work with her friend Candie around 9:30 p.m., and they eventually made their way to Bush's house, where Black was hanging out, so she could spend time with Black. She stated Candie and Candie's boyfriend, who had ridden to Bush's house with them, only stayed approximately ten minutes before leaving to go to McDonald's. Victim and Black then went into Bush's bedroom where they had sex. Candie returned to pick up Victim approximately thirty minutes later, and Victim went to Candie's house to stay the night. Victim testified that when she got to Candie's house, she noticed blood in her underwear; she told Candie what happened and showed Candie her underwear. Candie also testified and corroborated Victim's version of events. She stated that when she and Victim got back to her house that night, Victim showed her the undergarments with blood in them, and she helped Victim launder them. Candie stated Victim explained what had caused the blood, and she confirmed Victim relayed that the incident took place in Bush's bedroom.

Black and Bush both testified and agreed that Victim and Candie had come to Bush's home that night, but they denied that Black and Victim ever went into the bedroom.[1] Black acknowledged that he had spoken to Tony Robinson, an officer with the Pickens County Sheriff's Office, in early 2006, and Robinson informed him that Victim was fifteen and warned him that his relationship with Victim could "get [him] in trouble." Black, however, repeatedly refused to characterize his involvement with Victim as a "relationship," instead referring to it as

---

[1] Interestingly, on cross-examination, Bush acknowledged he knew Black had been arrested and the nature of the charges, but asserted "[t]here was nothing [he] could do" to help Black. He never contacted law enforcement to give a statement on Black's behalf prior to trial.

"companionship" and calling Victim a "great friend." Black confirmed he had previously been convicted of CSC with a minor.

During Bush's testimony, the trial court held a bench conference regarding the admissibility of three of Bush's prior convictions; he had been sentenced in Florida in 1987 to twenty-two years in prison for two counts of manslaughter and one count of shooting or throwing a deadly missile. Bush served approximately six years of his sentence and was released on March 1, 1993. The trial court admitted Bush's convictions for impeachment purposes. Bush was Black's only other defense witness.

The jury convicted Black of CSC with a minor and committing a lewd act upon a minor, and the trial court sentenced him to an aggregate sentence of twenty years. This court and the South Carolina supreme court affirmed the convictions. *See State v. Black*, Op. No. 2010-UP-370 (S.C. Ct. App. filed July 19, 2010); *State v. Black*, 400 S.C. 10, 30-31, 732 S.E.2d 880, 891 (2012).

In its opinion, the supreme court found error in the trial court's decision to admit Bush's two manslaughter convictions, but it determined the error was harmless, in part due to Black's failure to raise the admission of the third conviction for throwing a deadly missile. *Black*, 400 S.C. at 30-31, 732 S.E.2d at 891. In conducting its harmless error analysis, the supreme court stated it reviewed the entire record and "consider[ed] the overall strength of the State's case," including that Black's "own credibility was seriously impeached at trial as well by testimony that he had a criminal record that included two prior offenses for CSC with a minor." *Id.* at 29, 732 S.E.2d at 891 (emphasis omitted). The opinion further detailed the additional evidence against Black, including the fact that he met with law enforcement prior to May 2006 and was warned that Victim was only fifteen years old; Victim was able to describe some of the contents of Bush's bedroom despite Black's and Bush's testimony that she never left the living room; and Candie corroborated Victim's version of events. *Id.* at 29-30; 732 S.E.2d at 891. The supreme court ultimately concluded that "the admission of the additional impeachment evidence"—i.e. Bush's manslaughter convictions—"could not reasonably have affected the jury's result." *Id.* at 30, 732 S.E.2d at 891.

Black then filed an application for post-conviction relief, alleging, among other things, that his appellate counsel was ineffective for failing to raise the admission of the conviction for throwing a deadly missile on appeal. The PCR court granted relief on this ground and denied the State's motion to alter or amend. The State

filed a petition for writ of certiorari, and Black filed a cross-petition, both of which were granted by this court on October 13, 2023.

## ISSUES ON APPEAL

### State's Appeal

Did the PCR court err in granting post-conviction relief on the basis of ineffective assistance of appellate counsel for appellate counsel's failure to raise the admission of a defense witness's conviction for shooting or throwing a deadly missile when that conviction arose at the same time as two voluntary manslaughter convictions whose admission our supreme court found to be harmless error?

### Black's Cross-Appeal

Did the PCR court err in finding that trial counsel was not ineffective and preserved for appellate review whether the defense witness could be impeached with a remote conviction for throwing a deadly missile?

## STANDARD OF REVIEW

In PCR matters, the standard of review "depends on the specific issue before us." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). "We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them." *Id.* However, "[w]e review questions of law de novo, with no deference to [PCR] courts." *Id.* at 180-81, 810 S.E.2d at 839.

## LAW/ANALYSIS

The State argues the PCR court erroneously found Black was prejudiced by appellate counsel's failure to argue Bush's conviction for throwing a deadly missile was improper impeachment evidence because the supreme court determined on direct appeal that the admission of Bush's other convictions, for manslaughter, was harmless beyond a reasonable doubt. We agree.

"In [PCR] proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). To establish a claim of ineffective assistance of counsel, a PCR applicant must show that counsel was deficient and that counsel's deficiency prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficiency, "the [applicant] must show that counsel's

representation fell below an objective standard of reasonableness." *Id.* at 688. Additionally, an applicant "must prove that he or she was prejudiced by such deficiency to the extent of there being a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Southerland v. State*, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999) (emphasis omitted). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [applicant] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

"Generally, in analyzing a claim of ineffective assistance of appellate counsel, this [c]ourt applies the *Strickland* test just as it would when analyzing a claim of ineffective assistance of trial counsel." *Bennett v. State*, 383 S.C. 303, 309, 680 S.E.2d 273, 276 (2009). "Thus, in this case, we ask 1) whether appellate counsel's performance was deficient, and 2) whether [the applicant] was prejudiced by appellate counsel's deficient performance." *Id.* "To prove prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability he would have prevailed on appeal." *Anderson v. State*, 354 S.C. 431, 434, 581 S.E.2d 834, 835 (2003).

This case turns on the prejudice analysis required by *Strickland*'s second prong because that analysis is the same regardless of whether it was trial counsel or appellate counsel who was deficient. *See Hillerby v. State*, 431 S.C. 323, 333, 847 S.E.2d 500, 505 (Ct. App. 2020) ("We do not have to examine both deficiency and prejudice in every case."); *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."). Initially, we note our concern with the prejudice analysis—or rather, the lack thereof—in the PCR court's order. *Smalls* directs PCR courts, in analyzing prejudice, to "consider the specific impact counsel's error had on the outcome" of the proceeding as well as "the strength of the State's case in light of all the evidence presented to the jury." *Smalls*, 422 S.C. at 188, 810 S.E.2d at 843; *see also id.* ("In general, the stronger the evidence presented by the State, the less likely the PCR court will find the applicant met his burden of proving prejudice."). Here, the order states only that the PCR court considered "the record in this matter, particularly the opinion of the [South Carolina] Supreme Court," and found appellate counsel's performance was deficient and Black was prejudiced by the deficiency, without elaboration. This finding conflicts with the supreme court's opinion in the direct appeal; the supreme court ultimately found that although Bush's credibility was "diminished by the admission of the unchallenged

conviction for shooting/throwing a deadly missile, . . . the error could not have reasonably impacted the result in this case[,]" because Black's "*own* credibility was seriously impeached at trial as well by testimony that he had a criminal record that included two prior offenses for CSC with a minor[,]" "an investigator with the Pickens County Sheriff's Department testified that he had contacted [Black] before the incident alleged here and specifically warned him that [Victim] was only 15 years old[,]" and "[Black] acknowledged this conversation and conceded that he knew having a relationship with a 15-year-old could get him in 'trouble.'" *Black*, 400 S.C. at 29-31, 732 S.E.2d at 891.

Accordingly, we find Black failed to establish prejudice that would entitle him to a new trial because it is unlikely he would have prevailed on appeal even if the issue had been raised. *See Carrier v. State*, 441 S.C. 547, 558, 895 S.E.2d 679, 685 (Ct. App. 2023) ("Prejudice in ineffective-assistance-of-counsel claims is typically analyzed using a harmless error framework."), *cert. denied* (Nov. 14, 2024); *Anderson*, 354 S.C. at 434, 581 S.E.2d at 835 ("To prove prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability he would have prevailed on appeal."). Any error in the admission of evidence impeaching Bush's credibility does not change the fact that Black's *own* credibility was seriously damaged by his own criminal record, which included at least one prior conviction for CSC with a minor.[2] Further, we find Black's testimony at trial was evasive and not credible in other ways; specifically, although Black agreed he and Victim were "seeing each other" and he was "going out with [Victim]," he repeatedly refused to characterize his involvement with Victim as a "relationship." Instead, he referred to her—a fifteen-year-old child—as a "great friend" and "companion." Finally, we note that Victim's version of events was corroborated by other witnesses and evidence, particularly Victim's friend, Candie, in whom Victim confided immediately after the incident and who saw Victim's bloodied underwear. *See Thompson v. State*, 423 S.C. 235, 247, 814 S.E.2d 487, 493 (2018) (noting "[t]he PCR court reviewing the trial transcript is in no better position than we are to determine the credibility of trial witnesses or otherwise assess the strength of the State's case"). Therefore, we find the admission of the missile-throwing conviction "could not reasonably have affected the jury's result in this case[,]" and we hold the PCR court erroneously found Black established prejudice from counsel's alleged

---

[2] We note the supreme court's opinion refers to two previous CSC convictions. Although there are some references to "charges," in the plural, at trial, the State only questioned Black about one incident, which Black acknowledged. It is unclear to us whether there was one conviction or two which arose out of that incident.

deficiencies such that he was entitled to a new trial. *Black*, 400 at 29-31, 732 S.E.2d at 891; *see also Anderson*, 354 S.C. at 434, 581 S.E.2d at 835 ("To prove prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability he would have prevailed on appeal.").

As stated above, the prejudice analysis would be the same regardless of which attorney committed the deficiency, if any, in the preservation or presentation of this issue for appeal; therefore, we do not need to reach Black's cross-appeal as our finding that Black was not prejudiced is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

**CONCLUSION**

Accordingly, the decision of the PCR court granting relief is **REVERSED**.

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**